NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1463

THOMAS J. FOREST, M.D.

VERSUS

DR. CLYDE RAYMOND ROY, II, M.D., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 112,656-D
HONORABLE JAMES R. MCCLELLAND, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED.

Michael Campbell
Caffery, Oubre, Campbell & Garrison LLP
100 E. Vermilion Street, Suite 201
Lafayette, LA 70501
(337) 232-6581
COUNSEL FOR PLAINTIFF/APPELLANT:
    Thomas J. Forest, M.D.

**Dean M. Wattigny**
**DeRouen & Wattigny**
**103 E. Main Street**
**New Iberia, LA 70560**
**(337) 369-3906**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dr. Clyde Raymond Roy, II, M.D.**
    **The Urology Clinic**

**DECUIR, Judge.**

Thomas J. Forest, M.D., and Clyde Raymond Roy II, M.D., practiced medicine together at The Urology Clinic in New Iberia. After twelve years, Dr. Forest decided to relocate his practice and break off the professional relationship with Dr. Roy. Dr. Forest reviewed their financial history and determined that he had been underpaid the entire time he worked with Dr. Roy. Accordingly, he filed suit against Dr. Roy and The Urology Clinic seeking to recover monies due under two employment contracts executed in 1996 and 2002. The trial court rendered judgment in favor of Dr. Forest for $3,905.31, the amount of receivables Dr. Forest was owed in 2008, after he left the practice. In all other respects, including amounts alleged to be due from 1996 through 2007, Dr. Forest's claims were denied. Dr. Forest appeals.

In 1996, Dr. Forest joined The Urology Clinic upon the retirement of Dr. Edmond Lamperez. Dr. Roy and Dr. Forest were the only professionals in the practice, and they each had an employment contract with the clinic. Dr. Forest's contract specified that his compensation would be his "Net Receipts," which term was defined as "the amount remaining after deducting the Professional's Operating Expenses from the Professional's Gross Receipts." The Professional's Operating Expenses were defined as "50% of the Corporation's total operating expenses incurred by or for the professional and all other professional employees of the Corporation."

In 2002, Dr. Forest became a stockholder, officer, and director of The Urology Clinic. He served terms as president and vice-president. Dr. Forest hired his own attorney to draft a new employment contract wherein his compensation was once again described as net receipts. "Net receipts" were defined as "gross receipts minus the Professional's share of overhead." Dr. Forest was to be

compensated with a base salary of $175,000.00 to be paid in equal installments bimonthly and in quarterly bonuses.

Dr. Roy testified that he handled the finances of the corporation and wrote all the checks. He described his method of calculating bonuses as "based on the money available for distribution after overhead and salaries, divided by or prorated on a percentage of the collections that he had compared to me." Dr. Roy admitted that he did not use the corporation's certified public accountant to verify this method of calculation and did not discuss it with Dr. Forest. He did, however, always show his calculations to Dr. Forest. The financial records were always available to Dr. Forest for him to review, and Dr. Forest could have attended meetings with their CPA if he had chosen to do so.

Dr. Forest admitted that he was never denied access to the financial records of the corporation and never actually calculated the compensation due him until 2007. Dr. Forest presented evidence from his own CPA, Caroline Boudreaux, which showed that with Dr. Roy's method of calculating compensation, Dr. Forest was underpaid over $100,000.00 during the course of their professional relationship. In some years, Dr. Roy was underpaid, and in other years Dr. Forest was underpaid. Dr. Roy did not specifically agree or disagree with the calculations presented by Boudreaux.

In written reasons for judgment, the trial court cited the case of *Gamble v. D.W. Jessen & Associates.*, 509 So.2d 1041 (La.App. 3 Cir.), *writ denied*, 514 So.2d 454 (1987), which rejected the claim of an engineer who sought past due compensation after thirty years of accepting a method of calculation which he periodically reviewed and who had access to the records upon which it was based. Following *Gamble*, the trial court in the present case found:

2

Dr. Forest had access to the financial records of The Urology Clinic and was a stockholder, officer, and director of The Urology Clinic. Only after he decided to leave The Urology Clinic and his association with Dr. Roy did he question the calculation of his compensation. The calculation of Dr. Forest's compensation did not waiver over the course of his relationship with The Urology Clinic and Dr. Roy. Therefore, his claim for compensation for the time period January 1, 1997 through December 31, 2007 is hereby denied.

After reviewing the record before us, we find no manifest error in the decision reached by the trial court. Dr. Forest, a stockholder, officer, and director of the corporation which employed him, had access to all financial records and had the opportunity, routinely, to study and question the calculation of his compensation. He chose not to do so. We cannot say the trial court erred in rejecting his claims.

The judgment is affirmed, and costs of the appeal are assessed to Dr. Thomas J. Forest, M.D.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.